UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARIA DOBBINS,

                      Plaintiff,

v.

                                                              Case # 12-CV-6364-FPG

AMERICAN RED CROSS,

                      Defendant.            DECISION AND ORDER

## INTRODUCTION

Plaintiff Maria Dobbins ("Dobbins") brings this action against her former employer, the American Red Cross ("ARC"), alleging that she was discriminated against because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, ("ADEA") and its New York Law counterpart, the New York State Human Rights Law, New York State Executive Law § 296 ("NYSHRL"). ECF No. 1. With discovery now completed, ARC has moved for summary judgment. ECF No. 28. Dobbins has responded (ECF Nos 37, 38), ARC has filed a reply brief (ECF No. 40), and the Court deems oral argument unnecessary. For the following reasons, ARC's Motion for Summary Judgment is GRANTED, and the Complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

Dobbins was hired by the ARC in 1999 as a Team Supervisor for the Apheresis Department. Def. SMF[1] ¶ 7. At the time she was hired, Dobbins was 63 years old. *Id.* In April 2004, Dobbins became a Quality Assurance Associate in the ARC's Quality Assurance Department. Def. SMF ¶ 9. There are four positions in the Quality Assurance Department:

---

[1] Facts drawn from Defendant's Local Rule 56.1 Statement of Undisputed Material Facts (ECF No. 28-2) will be denoted as "Def.'s SMF ¶ [paragraph number]," and unless otherwise noted, are undisputed. Where the material facts are disputed, they are viewed in the light most favorable to Dobbins, as the non-moving party.

Quality Assurance Specialist (entry level), Quality Assurance Associate, Quality Manager, and Director of Quality. Def. SMF ¶ 10.

Quality Assurance Associates, such as Dobbins, are responsible for product quality in their region, and for ensuring that corrective action is taken when needed. Def. SMF ¶ 11. Quality Assurance Associates are must be able to analyze fact-specific situations and solve problems, while also keeping up with changes in ARC policies and procedures. Def. SMF ¶ 13. Specifically, Quality Assurance Associates are responsible for approving hold removals on products (usually blood) that were initially identified as not conforming to ARC quality standards; completing Material Review Board investigations when there are questions over product quality (known as "MRBs"); and overall general problem management. *See* Def. SMF ¶ 12.

Dobbins had multiple supervisors during her tenure as a Quality Assurance Associate. From April 2004 to September 2005 her supervisor was Karen Hopkins; from September 2005 to April 2006 her supervisor was Donna Anderson ("Anderson"); from April 2006 to approximately April 2007 her supervisor was Marianne Farallo; from April 2007 to October 2008 her supervisor was Donna Anderson; from December 2008 to June 2009 her supervisor was Barbara Klube-Falso ("Klube-Falso"), and from June 2009 to January 2010 her supervisor was Marcy DioGuardi (DioGuardi").

Dobbins' employment history reveals that her performance issues began in 2005-2006. In her 2005-2006 Review, Dobbins received an overall assessment of "met expectations," but several issues were documented. Dobbins received a rating of "below expectations" for the core value and guiding behavior "Results-Oriented." Her supervisor noted that Dobbins lacked technical knowledge, and noted that it was anticipated that Dobbins would improve as her technical knowledge increased. Dobbins also received a rating of "below expectations" for the

2

core expectations "Work Quality and Efficiency" and "Technical Knowledge." Her supervisor noted that Dobbins lacked attention to detail, and that the rate of return of problems was below average. It was further noted that Dobbins's technical knowledge of her former department is strong, but that she needed to gain knowledge in other areas. Notably, this review documented that Dobbins was removed from task of approving hold removals because of at least five case issues. *See* Def. SMF, Appendix, Tab A, Ex. 6.

In Dobbins' 2006-2007 Review, she again received an overall assessment of "met expectations," but several performance issues were again documented. Dobbins received a rating of "Below expectations" for core value and guiding behavior "Results-Oriented." Dobbins' supervisor noted that she was working on gaining experience, but did not demonstrate confidence or experience in solving problems. Dobbins also received a rating of "Below expectations" for the core expectation "Technical Knowledge." Her supervisor noted that while Dobbins's experience was increasing, her progress was slow. It was also noted that Dobbins' "Computer skills need marked improvement." *See* Def. SMF, Appendix, Tab A, Ex. 7.

As a result of this evaluation, Dobbins wrote an e-mail to Densie Danzi-Rotolo, Regional Director of Quality, after she reviewed the performance review with Anderson. There, Dobbins explained that she did not sign the review because she disagreed with the conclusions. Specifically, Dobbins felt that Anderson did not give her enough credit for the work that she performed. Dobbins also acknowledged that her computer skills were poor, but the ARC assured her that she would have time to learn. Dobbins expressed to Anderson that she felt that she has come a long way, and that she does not understand why speed is a concern. Dobbins stated that she felt Anderson is discriminating against her because of her age. ECF No. 37-6, Exh. E. As discussed later in Section B.4 of this Decision, Dobbins asserts that this complaint constitutes the filing of a formal discrimination complaint with the ARC.

3

In Dobbins' 2007-2008 review, which was completed by Anderson, Dobbins received an overall assessment of "below expectations" for first time. There were numerous performance issues documented in this review. These included considerable documentation of Dobbins' problems with MRBs, where over the year, Dobbins had difficulty in completing MRBs from start to finish. Dobbins completed fifteen out of twenty MRBs acceptably over the year, which is below the ARC's required standard of 95%. The review also documented issues with copying and pasting from prior MRBs, other errors such as missing additional documentation, having incomplete or missing elements (rationale, probable cause), and using incorrect descriptions.

Under "Development Goals in Current Role," Anderson noted that Dobbins is not progressing in certain types of problem review and has not passed the basic training that is necessary. Dobbins received ratings of "Below expectations" for the core value and guiding behavior "Results-Oriented;" and "Below expectations" for the core expectations "Work Quality and Efficiency;" "Technical Knowledge;" and "Reliability and Follow-Through." Anderson noted that Dobbins' work often contains mistakes, that her work speed is slower, and that timelines are missed. By the end of this year, Dobbins was assessed as not being able to perform hold reviews, MRB investigations, level 2 or 3 investigations, and visual inspections. *See* Def. SMF, Appendix, Tab A, Ex. 8.

For Dobbins' 2008-2009 review, she received an overall assessment of "2 – More is expected." The format of this review is different from the prior review forms. Most notably, it is now called the "Cornerstone Conversations Planning and Review Form." Dobbins received a rating of "2 – More is expected" in her job responsibilities involving the review of systems and processes (#1); communicating concerns with processes to staff (#3); participation in meetings (#5) and identifying quality issues (#6). She also received a rating of "2 – More is expected" in

4

the core competencies "Accountability and Results;" "Communication and Relationship Building;" and "Decision Making, Problem Solving and Innovation."

Dobbins' Individual Development Plan (which is a component of the review) rated her as "2 – More is expected" for all the listed job skills. There are six documented problems that Dobbins incorrectly handled under the job skill "Interviewing Skills/Investigative Techniques," and additional issues were documented in each job skill category. *See* Def. SMF, Appendix, Tab A, Ex. 9, 10.

In March 2009, Dobbins was placed on her first Performance Improvement Plan (PIP) by Klube-Falso, who was her supervisor at the time. Pl. App. Vol II, Ex. J. During this time, managers at the ARC would not release Dobbins to perform work because the managers felt they had attempted to help Dobbins, but there was no progress. *See* ECF No.37-7, Ex. L.

In August 2009, DioGuardi became Dobbins' new supervisor, and Dobbins was given a skills assessment. Dobbins was given two months to prepare for the assessment, and the ARC's stated reason for giving this assessment was to evaluate Dobbins without relying on the prior documentation from her reviews regarding her performance. Dobbins did poorly on this skills evaluation, and the recommendation made was that Dobbins would not benefit from additional training. The evaluation found that Dobbins lacked basic skills, and that she put the ARC at both a compliance and safety risk.

Dobbins was then placed on a second PIP in October 2009. *See* ECF No. 37-6, Ex. F. There, the ARC acknowledged that Dobbins had not been performing certain tasks for some time before she was tested on them August. As a result, ARC management decided to give Dobbins a second PIP and skills assessment to ensure that the recommendation from August 2009 was appropriate. *See* ECF No. 37-7, Ex. M.

5

As part of this second PIP, Dobbins was given a detailed, 4-week training plan for the month of October 2009. Dobbins was removed from performing all tasks at the ARC so that she could solely focus on training. The training was delivered to Dobbins as if she was a new staff member, and Dobbins was personally given a full-time instructor for the month. *See* ECF No. 37-6, Ex. K.

In late October and early November 2009, Dobbins was given the second skills assessment over the course of two days. *See* ECF No. 37-7, Ex. M. Dobbins did not pass the assessment. Specifically, Dobbins worked on thirteen scenarios over the two days, and only completed five scenarios correctly. It took Dobbins approximately twelve hours over two days to complete the assessment. By comparison, the ARC's newest associate in the same department, who had approximately eight months experience, completed the same assessment in approximately one and a half hours, and received a 90% grade.

On January 14, 2010, based on the results of this final skills assessment, Dobbins was offered the option of resigning in lieu of being fired. ECF No. 1, ¶ 26. DioGuardi, who was age 50 or 51 at the time, recommended Dobbins' termination, and Human Resources Manager Gene Voss, who was age 58 at the time, approved the recommendation. Def. SMF ¶ 42. On January 15, 2010, Dobbins elected to resign, and her last day of employment with the ARC was January 29, 2010. Def. SMF ¶ 44.

Dobbins subsequently brought this action, and alleges that her forced resignation was a form of age discrimination committed by the ARC.

DISCUSSION

A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012). The evidence is viewed, and all reasonable inferences are drawn, "in the light most favorable to the party opposing the motion." *Shemendera v. First Niagara Bank*, No. 12-CV-178S, 2014 WL 847329, at *1 (W.D.N.Y. Mar. 4, 2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). In resolving a summary judgment motion, the Court's function is not to weigh the evidence, but rather is to determine whether there is a material issue of fact to be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted).

The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL. *See Sutera v. Schering Corp.*, 73 F.3d 13, 16 n. 2 (2d Cir.1995). As a result, Dobbins' ADEA and NYSHRL discrimination claims are analyzed together for purposes of this motion.

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her]…age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges age discrimination, she "must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653-

54 (2008)). Claims brought under the NYSHRL are analytically identical to that of the ADEA. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010).

The Court uses the three-step *McDonnell Douglas* burden-shifting framework to determine whether a plaintiff has met the burden established by the ADEA. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) her membership in the protected class; (2) her qualifications for the position in question; (3) the occurrence of an adverse employment action against her; and (4) circumstances surrounding the adverse action that give rise to an inference of discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). The plaintiff's burden to establish a *prima facie* case is "minimal". *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to produce evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 142 (2000). A Defendant carries their burden of production if the proffered reason "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Ricci v. DeStefano*, 530 F.3d 88, 110 (2d Cir. 2008). If a defendant offers such a reason, the presumption of discrimination resulting from a plaintiff's establishment of a *prima facie* case "drops from the picture." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

The burden then shifts back to the plaintiff to produce evidence that the defendant's proffered, non-discriminatory reason is mere pretext. But producing some evidence is not enough; rather, the plaintiff must produce "sufficient evidence to support a rational finding that

8

the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Van Zandt v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough ... to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *Weinstock,* 224 F.3d at 42. (alterations and internal quotation marks omitted.).

With these standards in mind, and for the reasons that follow, I find that Dobbins has failed to raise a triable issue of facts to establish that the ARC's proffered reasons for terminating Plaintiff are pretextual, and the ARC is therefore entitled to summary judgment.

B. Analysis

    1. *Prima Facie* Case

As stated, to establish her *prima facie* case, Dobbins must show that she was (1) within the protected age group; (2) that she was qualified for the position; (3) that she was discharged, and (4) that the discharge took place under circumstances giving rise to an inference of age discrimination. *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000). Dobbins' burden in establishing her *prima facie* case is *de minimis*. *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 72 (2d Cir. 2004).

ARC argues that Dobbins has failed to establish her *prima facie* case. Specifically, ARC concedes for purposes of the summary judgment motion that Dobbins satisfied the first and third items; namely, that she was within the protected age group when she was hired, and that she was discharged from employment with ARC. However, ARC argues that Dobbins cannot meet her *prima facie* burden based on the other two factors, since Dobbins was not qualified for the

9

position, and the circumstances around her discharge do not give rise to a discriminatory inference.

### a. Qualified for the Position

ARC argues that the second prong of the *prima facie* test requires Dobbins to have been "performing satisfactorily." DEF MEMO at 4. For support, ARC points to her evaluations in 2008 and 2009 which show below satisfactory ratings, and further points to her inability to pass the final skills assessment immediately prior to her termination. While ARC's argument that Dobbins was not "performing satisfactorily" is not entirely incorrect, it is somewhat misleading in the context of establishing a *prima facie* case.

In most discrimination cases, the second element to establish a prima facie case is usually described by courts as whether the plaintiff is "qualified for the position." It is also true that some cases use different language – which ARC uses here – to describe the standard as "performing satisfactorily." But in *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91–92 (2d Cir. 2001), the Second Circuit directly addressed the usage of these two terms in the context of a plaintiff's *prima facie* case. The Second Circuit held that:

> As an initial matter, the district court overstated the requirements for a *prima facie* case. Instead of requiring [plaintiff] to demonstrate that he was "qualified for the position," it demanded a showing that "he was performing his duties satisfactorily." We have ourselves used similar language. But in doing so we have not, of course, raised the standard set by the Supreme Court for what suffices to show qualification. Thus a mere variation in terminology between "qualified for the position" and "performing ... satisfactorily" would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer. The qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision. As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he "possesses the basic skills necessary for performance of [the] job." As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.

> In this case, the [district] court's use of the "satisfactory" rather than the "qualified" language became the basis for a heightened requirement. The district court found that because [defendant] was dissatisfied with [plaintiff's] work performance, [plaintiff] had not established the second element of a *prima facie* claim. This was error. Although the defendant did properly offer up its dissatisfaction with [plaintiff's] work performance as its legitimate business reason for discharge, there is no basis for the district court's conclusion that [plaintiff] lacked even minimal qualification for a job whose duties he had been performing for seven years.

*Slattery*, 248 F.3d at 91–92. (internal citations omitted).

ARC's arguments to this Court regarding whether she was qualified for her position are focused on providing support for their legitimate, non-discriminatory reason for her subsequent firing, as opposed to establishing that she was not qualified for her position even at the time she was hired. Indeed, the ARC's own "employment interview evaluation form" from Dobbins' March 9, 2004 interview for the Quality Assurance Associate position rated her as a 3.25 out of 4, and recommended hiring her for the position.

                      b.   <u>Inference of Discrimination</u>

ARC claims that Dobbins cannot raise an inference of discrimination regarding her termination because: (1) Dobbins has only accused Anderson of discrimination, and Anderson had no role in the decision to ask Dobbins to resign; (2) Dobbins was not replaced in her job by younger employees, but rather the ARC hired two individuals into the position a step below Dobbins' old position; (3) Dobbins was hired by the ARC when she was 63, at a time when she was already in the protected class; (4) the supervisors who recommended Dobbins' termination were themselves in the protected class; (5) alleged discriminatory comments that Dobbins attributes to Klube-Falso and DioGuardi are stray remarks or inadmissible hearsay; and (6) Dobbins merely believes that she was discriminated against, which is not enough to establish an inference of discrimination that led to her termination.

11

Again, Dobbins' burden at this stage to establish her *prima facie* case is minimal, so the Court will briefly address each of these points. While it is true that Anderson did not ask Dobbins to resign, that is not necessarily dispositive. In fact, the record reveals that Anderson did document many of Dobbins' performance problems that led up to her termination, so Anderson's involvement in this matter cuts both ways.

Regarding the individuals who replaced Dobbins, the record confirms that no one replaced her in her mid-level associate position, but at the same time, the ARC did hire two entry level employees into that same department, and they were 25 and 29 years old. The Supreme Court has held that "because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). As such, Dobbins' argument that the ARC knowingly replaced her with employees who were both at least 30 years younger than her can be used to support her *prima facie* case.

There is no dispute that Dobbins was a member of the protected class when she was hired, and there is also no dispute that those at the ARC who recommended and approved her termination were also in the same protected class. While not dispositive, these facts certainly weaken Dobbins' claims that she was discriminated against because of her age. *See, e.g., Mathews v. Huntington*, 499 F. Supp. 2d 258, 267 (E.D.N.Y. 2007) ("the fact that…the decision makers with regard to plaintiff's firing-were forty-five and fifty-six years old, respectively, weakens any inference that the decision to fire plaintiff was based on his age.)

Dobbins points to two comments that were allegedly made to support her claim. First, she alleges that Klube-Falso had a conversation with her, where she asked Dobbins if she planned to retire. Second, Dobbins alleges that after she resigned, DioGuardi emailed the ARC

staff and suggested that if people asked why Dobbins was not at the ARC, they could say that Dobbins retired. Although the ARC asks the Court to simply disregard these statements, they could be admissible under Fed. R. Evid. 801(d)(2). Both of the comments were made during these individuals tenures at ARC, and the comments directly relate to their functions at ARC. *See Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537-38 (2d Cir. 1992). While a factfinder could ultimately discount these statements, for the purpose of this *prima facie* determination, the Court will consider them. ARC's final argument, that Dobbins' own speculation cannot establish a *prima facie* case, is correct, and undisputed. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995).

c. <u>Conclusion</u>

Taking all of this into consideration, the Court finds that Dobbins has established her *prima facie* case. ARC concedes that Dobbins meets the first and third elements, and as described above, Dobbins meets the second element (that she was qualified for the position). The fourth element – that her termination occurred under circumstances giving rise to age discrimination – is a very close call. The fact that Dobbins was in the protected class when hired and that she was recommended and approved for termination by individuals also in the protected class strongly undercuts her claim of discrimination. However, the fact that she was replaced (albeit by two people in the position one step down) who were significantly younger than her, coupled with the remarks by Klube-Falso and DioGuardi, cause this Court to conclude that Dobbins has carried her burden, even if it were carried ever so slightly. In making this determination, the Court is especially mindful of the fact that Dobbins' burden at this *prima facie* stage is minimal.

2. <u>ARC's Legitimate, Non-discriminatory Reasons</u>

Since Dobbins has established her *prima facie* case, the burden shifts to the ARC to produce a legitimate, non-discriminatory reason for asking Dobbins to resign. ARC has easily carried this burden.

The record is voluminous as to why Dobbins was asked to leave. Over the course of her employment, she was removed from the basic tasks that someone in her position was required to perform, such as holds and MRBs. *See* Def. SMF ¶¶ 23-41. Given these issues, the ARC provided Dobbins with multiple opportunities to improve, and opportunities to be reassessed. After Dobbins was put on two performance improvement plans and given two separate opportunities to pass the assessment, she still could not pass it. While they were not required to, the ARC even provided Dobbins with a coach and a full month of training during which time Dobbins was not required to perform other work for the ARC prior to her taking the second assessment – which she still did not pass.

Given the ARC's line of work, serious health risks to the public can occur if blood is not screened and managed properly. In fact, the Quality Assurance employees work to keep the ARC's work safe, and to ensure that the ARC's work is free from as many errors as possible.

The fact that Dobbins could not pass the ARC's assessment to work in Quality Assurance – a point that she does not dispute – is a sufficient, legitimate, non-discriminatory reason provided by ARC to support ending her employment.

3. <u>Pretext</u>

Since the ARC has produced a legitimate, non-discriminatory reason for asking Dobbins to resign, the burden shifts back to Dobbins to establish that the ARC's reasons were mere pretext. Put another way, "plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the opportunity to prove by a

14

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143. (internal citations omitted).

Dobbins attempts to show pretext by making two broad arguments. First, she argues that other employees who were not in the protected class were treated differently. In support of this argument, she posits that other employees made errors on hold removals but were not removed from holds or MRBs, that she was the only employee to undergo skills assessments, and that no other Red Cross employees were asked to resign.

In her affidavit, Dobbins states "In 2007, I was removed from "hold removals" and "MRBs". While I was told the reason for the removal was due to errors, three (3) other Quality Assurance Associates made similar errors, but were never removed from "hold returns" and "MRBs"." ECF No. 38, ¶ 28. Not only does Dobbins fail to state the ages of these "other employees" or provide any information to prove they are outside of the protected group, she fails to even provide their names. Of course, these are critical details, and without proving these details, Dobbins' broad and undetailed allegations are not persuasive. In other words, Dobbins' statement is devoid of any factual underpinnings that would permit the Court to find, by a preponderance of the evidence, that this incident could demonstrate that her removal several years later was a pretext for age discrimination.

Second, Dobbins argues that the statements made by Klube-Falso and DioGuardi statements are enough to prove discrimination. This argument misses the mark. Even assuming that Klube-Faso asked Dobbins when she was going to retire, and assuming that DioGuardi's email, sent after Dobbins resigned, and which encouraged other employees say that Dobbins retired (as opposed to that she resigned in lieu of being fired) could establish discrimination on the part of the ARC, that is not the relevant question at this stage of the analysis. Rather,

15

Dobbins' burden now is to establish that the ARC's non-discriminatory reason – namely, that Dobbins's performance was unacceptable and that she failed the skills assessment – was false and a pretext for unlawful discrimination. These statements do nothing to advance that burden, in that the statements do not even suggest, much less establish, that Dobbins' performance was satisfactory, or that she actually passed the skills assessment, or that the skills assessment was unnecessary or somehow a sham. *See St. Mary's Honor Center*, 509 U.S. at 515 (a proffered "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.")

In the end, neither of these arguments, either alone or taken in combination, suffice to carry Dobbins' burden. Dobbins has not presented evidence upon which a reasonable trier of fact could determine that the ARC's proffered reason was pretextual, and instead, that age was the but-for reason that she was asked to resign. Because Dobbins has failed to establish pretext, her discrimination claims under the ADEA and the NYSHRL fail, and the ARC is entitled to summary judgment.

    4. Retaliation

Finally, the parties disagree about whether Dobbins pled a cause of action for retaliation in her Complaint. Dobbins argues that she has; the ARC disagrees.

Dobbins' Complaint (ECF No. 1) very clearly delineates, in separate bold text, her causes of action. And the end of the factual allegations, her Complaint has two distinct headings. The first is:

**FIRST CAUSE OF ACTION**
**Discrimination in Employment**
**Violation of the Age Discrimination in Employment Act**

Followed by:

## SECOND CAUSE OF ACTION
### Discrimination in Employment
### Violation of the New York State Human Rights Law

ECF No. 1, at 9-12.

Notably, there is no other cause of action header or section in the Complaint, and the word "retaliation" appears nowhere in the first or second causes of action in the Complaint.

The only reference to retaliation in the Complaint appears in paragraphs 17-19, where Dobbins alleges that she filed a formal complaint alleging age discrimination against her manager, Donna Anderson, in August 2007. Dobbins then alleges that "shortly after making that good faith complaint, Plaintiff had a good faith basis to believe that she was retaliated against" for making that complaint.

If Dobbins meant to plead a cause of action for retaliation, her Complaint is drafted very poorly. In this Court's view, the glaring omission of a separate heading for this cause of action suggests that this argument is an eleventh hour attempt to cure a pleading deficiency. Ultimately, the pleading issue does not need to be resolved, because even if she pled such a retaliation claim, Dobbins cannot succeed.

Both retaliation claims and discrimination claims are subject to the same *McDonnell Douglas* burden-shifting analysis. *See Gorzynski,* 596 F.3d at 110. To establish a *prima facie* case of retaliation, a plaintiff must allege that: (1) she engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 91 (2d Cir. 2011).

Even assuming that Dobbins properly pled and made out a *prima facie* case of retaliation, ARC would still be entitled to summary judgment for essentially the same reasons they are entitled to summary judgment on her discrimination claim. Again, Dobbins has not presented any evidence from which a reasonable jury could conclude that ARC's decision to seek Dobbins' resignation was mere pretext for a retaliatory motivation. Further, there is no direct evidence of a causal connection between the protected activity and Dobbins later resignation, so she is left to rely on temporal proximity.

In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation and quotation marks omitted) (twelve days between protected activity and discharge could suggest a causal relationship). The Supreme Court has further held that "when a plaintiff is relying solely on temporal proximity, the protected activity and an adverse employment action must occur 'very close' to each other." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). While neither the Supreme Court or the Second Circuit has not established a bright-line rule to define 'very close', "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).

Here, Dobbins made her complaint in 2007, and her employment ended in 2010. That is simply too far apart, and Plaintiff has cited no cases – nor is the Court aware of any – where a court has held that a three year gap in time qualifies to establish an inference of causation.

Simply put, nothing in the record supports Dobbins' belated claim that she was asked to resign in 2010 in retaliation for her 2007 complaint. She has wholly failed to show that "the

adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir. 2004). As such, assuming a cause of action for retaliation was pled, the ARC is similarly entitled to summary judgment.

## CONCLUSION

For all of these reasons, Defendant ARC's Motion for Summary Judgment (ECF No. 28) is GRANTED in its entirety, and the Complaint is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment and to close this case.

IT IS SO ORDERED.

DATED:   Rochester, New York
         March 20, 2017

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court